**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MEMPHIS DISTRIBUTION PARTNERS, LLC<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>ELLIOTT AUTO SUPLY CO., INC., d/b/a/ FACTORY MOTOR PARTS,<br><br>Defendant/Counter-Claimant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-cv-02814-SHL-tmp |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FIRST, SECOND, AND THIRD MOTIONS IN LIMINE AND DENYING DEFENDANT'S MOTION IN LIMINE AS MOOT**

Before the Court are three Motions in Limine filed by Plaintiff Memphis Distribution Partners, LLC ("MDPL") and one Motion in Limine filed by Defendant Elliott Auto Supply Co., Inc. d/b/a Factory Motor Parts ("FMP"). (See ECF No. 53; ECF No. 54; ECF No. 55; ECF No. 56.) The Parties have filed corresponding Responses. (See ECF No. 57; ECF No. 59; ECF No. 60.)

For the reasons stated below, FMP's Motion in Limine is **DENIED AS MOOT**, and MDPL's three Motions in Limine are **GRANTED IN PART** and **DENIED IN PART**,

## BACKGROUND

The background of this case was previously outlined in this Court's Order denying the Parties' cross-motions for summary judgment, so an abbreviated version follows. (See ECF No. 49.)

In October of 2021, MDPL purchased property (the "Property") located in Memphis, Tennessee. (ECF No. 61 at PageID 1502.) MDPL became landlord to IEH Auto Parts Holding, LLC ("IEH"), who was the former owner's tenant. (Id.) In 2023, IEH filed for bankruptcy

protection. (Id.) As part of the bankruptcy proceedings, IEH filed an initial cure notice, which MDPL received, that notified MDPL of the potential assignment and assumption of their lease, proposed a cure amount of $0.00, and informed MDPL that failure to timely object would prevent it from asserting additional cure amounts or seeking other defaults. (ECF No. 49 at PageID 1288.) MDPL did not object in any way relevant to the condition of the property.[1]

Ultimately, FMP assumed IEH's lease obligations to MDPL as part of the bankruptcy proceedings. (Id. at PageID 1289.) The bankruptcy court issued a final sale order, which listed MDPL's lease with IEH and a cure amount of $0.00. (Id.) The sale order also stated that "[u]pon the Closing and payment of any Cure Amount, each non-Debtor party to an Assumed Contract or Assumed Lease shall be forever barred, estopped, and permanently enjoined from asserting against the Buyers . . . any default, breach, claims of pecuniary losses arising from the Assumed Contract." (ECF No. 34 at PageID 554.) In other words, the sale order foreclosed MDPL from asserting claims against FMP for any default, breach, or pecuniary losses that existed as of the date of the sale order.

In June 2023, FMP assumed IEH's lease and entered a lease agreement with MDPL. (ECF No. 61 at PageID 1502.) Since then, the Parties have disputed who between them is obligated to repair the Property's roof and HVAC systems, with the answer dependent on when the need for the repair arose. MDPL asserts that the need for replacement of the roof and repairs/replacement of the HVAC systems arose after entry of the bankruptcy sale order, which, under its reading of the Parties' lease agreement, means FMP is obligated to cover the cost associated with the roof's replacement and the HVAC system's repairs/replacement. (Id. at

[1] MDPL contends that it objected in the amount of $233,163.98, which represented IEH's unpaid rent, however, this contention is immaterial because it does not involve objections related to the then-current condition of the roof or HVAC systems.

PageID 1504.) FMP asserts that the need for repairs/replacement of the roof and HVAC systems pre-existed its assumption of the lease, so the bankruptcy sale order prevents MDPL from holding FMP liable. (Id.)

A non-jury trial is scheduled for November 16, 2026, to address these contentions. In anticipation of trial, the Parties have filed the instant motions in limine.

## ANALYSIS

FMP seeks to exclude undisclosed opinions of Travis Todd, Cynthia Rapp, or any employee of Landmark Heating & Air Conditioning, Inc. (ECF No. 56.) The Parties appeared at a pre-trial conference on November 6, 2026, and agreed that Todd, Rapp, and any Landmark employee who testifies would not offer the type of testimony FMP's motion seeks to exclude. Therefore, based on the positions of the Parties during the pre-trial conference, and the Court's reliance on those positions, FMP's Motion is **DENIED AS MOOT**.

MDPL filed three motions in limine. The first and third motions are related and seek to exclude certain testimony from Donald Ball, MDPL's corporate representative, that MDPL asserts states legal conclusions. (See ECF No. 53; ECF No. 55.) FMP opposes these motions, arguing that Ball's testimony would not be offered to assert legal conclusions, but instead serves other purposes that are permissible. (ECF No. 60 at PageID 1462–65.) FMP also argues that concerns around legal-conclusion testimony are diminished here in a non-jury trial. (Id. at PageID 1466.) MDPL's remaining motion in limine seeks to exclude hearsay testimony from Harris Gloss, IEH's Operations Manager from 2018 to 2021. (ECF No. 54 at PageID 1354.) FMP argues that Gloss's testimony is admissible for a non-hearsay purpose. (ECF No. 59 at PageID 1440–42.) The motions are addressed in more detail below.

A. MDPL's First and Third Motions in Limine

Some of the testimony MDPL seeks to exclude in its first and third motions in limine includes Ball's understanding of the initial cure notice that MDPL received. (ECF No. 53 at PageID 1343–45.) Other testimony involves Ball's understanding of the type of conduct that would constitute a default under the Parties' lease agreement. (ECF No. 55 at PageID 1366.) MDPL argues that portions of Ball's testimony run the risk of "invad[ing] the decision-making authority of the Court." (ECF No. 53 at PageID 1345 (citing Torres v. Cnty. of Oakland, 758 F.2d 147, 150 (6th Cir. 1985)); see also ECF No. 55 at PageID 1366–67 (citing id.).)

FMP opposes both motions. FMP argues that Ball, as MDPL's corporate representative, should be permitted to testify as to MDPL's understanding of IEH's obligations under the lease agreement. (ECF No. 60 at PageID 1463.) In other words, FMP seeks to introduce Ball's testimony to show that MDPL understood that IEH's failure to repair the roof and HVAC systems would constitute a default under the lease agreement. (Id.) FMP contends that this testimony reflects MDPL's understanding of the lease agreement, which FMP asserts is relevant to its waiver and estoppel defenses and to its counterclaims against MDPL. (Id.)

As to testimony involving Ball's understanding of the initial cure notice, FMP makes the same argument: that such testimony will be offered to show MDPL's knowledge and conduct, not to offer an opinion on the governing law or its application to the facts. (Id. at PageID 1464.) Moreover, FMP asserts that MDPL's knowledge and conduct are critical to its estoppel and waiver counterclaims/defenses. (Id. at PageID 1464–65.) FMP also highlights that "[i]nadmissible evidence is presumed to be ignored by a judge in a bench trial." B&L Mgmt. Grp., LLC v. Adair, No. 17-2197, 2019 WL 13172096, at *1 (W.D. Tenn. Jan. 9, 2019) (citing Harris v. Rivera, 454 U.S. 339, 346 (1981) (per curiam)).

Here, MDPL is correct that any legal conclusion offered by Ball should not be considered. As such, any portion of Ball's testimony that would be inadmissible will be ignored. The Court will only consider the challenged portions of Ball's deposition testimony for the purposes FMP highlights and any other relevant, admissible purpose. The Court will disregard any legal conclusions offered by Ball. Therefore, MDPL's first and third motion in limine, are **GRANTED IN PART** and **DENIED IN PART**. Moreover, although not addressed by the Parties, it is unclear at this point whether the anticipated testimony is relevant, given the Court's ruling as to the relevant fact issue—when the roof and HVAC system reached the point when repair and/or replacement was needed.

B. MDPL's Second Motion in Limine

In its second motion in limine, MDPL seeks to exclude testimony from Gloss, IEH's former Operations Manager. (ECF No. 54 at PageID 1354.) Specifically, Gloss testified that Lakivia Hightower, IEH's General Manager, requested Cap. Ex. Expenditure funds[2] for work to be performed on the roof at the Property. (ECF No. 54 at PageID 1354.) Additionally, Gloss testified that Zimmerman,[3] who succeeded Hightower as General Manager, also requested Cap. Ex. funding for the roof. (Id. at PageID 1356.) MDPL argues that testimony offered by Gloss of statements made by Hightower or Zimmerman constitutes inadmissible hearsay. (Id. at PageID 1357.)

[2] Cap. Ex., short for "Capital Expenditure," refers to "spending on long-lived improvements and replacements such as roofs, HVAC systems, and building infrastructure." See Capital Expenditure, Commercial Real Estate Glossary, available at Capital Expenditure (Cap Ex) in CRE: Definition & Examples | Cove Glossary (last accessed Nov. 10, 2026).

[3] The Parties do not specify a first name for Zimmerman.

According to FMP, it does not plan to offer Gloss's testimony to show the truth of Hightower and Zimmerman's statements, but instead to show the effect of their statements on him. (ECF No. 59 at PageID 1440–42.) FMP contends that the effect of these statements on Gloss is relevant because MDPL has made Gloss's conduct an issue. Specifically, FMP states that MDPL pursued a line of inquiry, by deposition, that involved asking whether Gloss, having worked at the Property since 2018, raised the condition of the roof and HVAC systems with any FMP representative when FMP's tenancy began in June 2023. (Id. at PageID 1441–42.)

FMP maintains that the Court cannot fairly evaluate Gloss's conduct without knowing that the roof was a recurring subject between him and IEH's General Managers, who told him it was being addressed through IEH's capital-expenditure process. (Id. at PageID 1442.) In other words, FMP asserts that Gloss's failure to discuss the roof issue with FMP is explained by Hightower and Zimmerman's statements to him.

Based on these arguments, FMP asserts that, if MDPL designates or elicits testimony about whether Gloss raised the roof's condition at the beginning of FMP's tenancy, Gloss should be permitted to testify, in response, that

> 1. during IEH's tenancy, capital-expenditure and roof-replacement decisions were made above his level of authority, by IEH's General Manager and corporate office (ECF No. 54, PageID 1361–63, Gloss Dep. 21:12–22:3, 25:11–17); and
>
> 2. Ms. Hightower and Mr. Zimmerman told him that the roof was being addressed through IEH's Cap [] Ex process (id. at PageID 1360–65, Gloss Dep. 20:9–22:9, 25:11–17, 26:4–9, 27:17–19).

(Id. at PageID 1441–42.) Finally, FMP asserts, as with the other motions in limine, that because the Court is the factfinder, any concern that the testimony might be considered for its truth is fully addressed by the Court's ability to consider it only for the limited purpose for which it is offered. (Id. at PageID 1442.)

MDPL, in reply,[4] contends that, even if the statements are offered to show their effect on Gloss, questions about IEH's maintenance or planned repairs "is wholly irrelevant to the question before the Court—whether the roof needed replacement prior to June 5, 2023." (ECF No. 62-1 at PageID 1517.)

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 378 (6th Cir. 2009) (citing Fed. R. Evid. 801(c)). When a statement is "not offered to prove the truth of the matter asserted but to show its effect on the listener," it is not hearsay. Id. at 379.

This motion in limine fares similarly to those discussed above. To be sure, MDPL is correct that Gloss's testimony, to the extent it offers Hightower and Zimmerman's statements to show the truth of the matter asserted therein, is not admissible. However, it appears that MDPL wants to have its cake and eat it too. MDPL seeks to elicit testimony that Gloss did not raise the roof and HVAC conditions with FMP, but exclude his explanation for not raising those issues, i.e., that he was under the impression, based on Hightower and Gloss's statements, that the roof was being dealt with through IEH's Cap. Ex. process.

As to MDPL's relevance argument, it is unclear from its reply brief whether MDPL intends to introduce the line of questioning that led to Gloss's testimony that included the hearsay statements. As FMP asserts, the effect the hearsay statements had on Glass are "relevant because MDPL . . . made Gloss's conduct an issue [and] elicited every challenged statement at the deposition it noticed." (ECF No. 59 at PageID 1440.) So, if MDPL seeks to introduce the

---

[4] MDPL filed an unopposed motion for leave to file a reply brief to FMP's response to MDPL's second motion in limine. (ECF No. 62.) MDPL attached its proposed reply brief to the motion for leave. (ECF No. 62-1.) MDPL's Motion is **GRANTED** and its reply brief is considered herein.

deposition testimony inquiring into whether Gloss raised the roof and HVAC conditions with anyone at FMP, then his explanation for whether he raised those issues would be relevant. If those portions of Gloss's deposition are not offered, then it is unclear that the hearsay statements would be relevant.

At this point, rather than prohibiting Gloss from including the hearsay statements in his testimony, the better course is to only consider those statements for the narrow, non-hearsay purpose offered by FMP. As such, if MDPL introduces testimony that inquires into whether Gloss raised the roof and HVAC systems conditions with others at the company, then the hearsay statements explaining Gloss's decision will be admitted, but will not be taken as proof that anyone actually pursued repairs prior to FMP's tenancy. Instead, Gloss's testimony may include those hearsay statements, but they will only be considered for the limited purpose of explaining why Gloss did not raise concerns about the roof with FMP's representatives. Therefore, MDPL's motion is **GRANTED IN PART** and **DENIED IN PART**.

## CONCLUSION

For the reasons outlined above, FMP's Motion in Limine is **DENIED AS MOOT**. Additionally, MDPL's first and third motions in limine, (ECF No. 53; ECF No. 55), are **GRANTED** to the extent they request that the Court not consider the legal opinions that can be gleaned from Ball's testimony. Those motions are otherwise **DENIED**. Finally, MDPL's second motion in limine, (ECF No. 54), is **GRANTED**, to the extent it requests that the Court not consider the hearsay statements included in Gloss's testimony for the truth of the matter asserted therein. That motion is otherwise **DENIED**.

**IT IS SO ORDERED,** this 13th day of November, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE